In re Sale of Lots in Chester

*Edward J. Zetusky, Jr.,* for City of Chester.
*Leo A. Hackett,* for Chester-Upland School District.
*Nelson J. Sack,* for respondent.

deFURIA, *J.,* February 25, 1977 — This matter comes before the court under the provisions of the Real Estate Tax Sale Law, July 7, 1947, P.L. 1368, art. VI, as amended December 21, 1973, (No. 157), sec. 2, 72 P.S. §5860.613, concerning the private sale of tax delinquent properties. Under section 613 of that Act, the court is asked to either confirm or disapprove the private sale as "it appears just and proper." If the court disapproves the sale, then a price must be set below which such property shall not be sold.

Michael Kruczaj, hereinafter referred to as respondent, entered into negotiations with the County Tax Claim Bureau, hereinafter referred to as county, for the private purchase of certain properties now titled to the county as a result of insufficient bids being offered at delinquent tax sales on said lots. The lots in question lie between lot number 100 and 118 of Lewis Street in the City of Chester.

In order to process the sale of the lots, respondent requested and received from the City of Chester and the Chester-Upland School District, hereinafter referred to as municipalities, resolutions authorizing said sale for a unit price of $350 for each lot. The resolutions cover only ten lots: 100-108, 110.

The resolutions obtained by respondent from the municipalities were not necessary to effect this transaction. Resolutions from the taxing district had been required previous to the enactment of the Real Estate Tax Sale Law, which became effective on January 1, 1976. After that date, the resolutions became a nullity. The court refers to them only for the purpose of exhibiting the intention of the municipalities to receive a unit sale price of at least $350.

The county prepared an agreement of sale covering all lots 100-118, with the notation that lot 111 was not county owned and not delinquent and that lot 117 was delinquent but not county owned. The agreement was submitted to respondent with the purchase price of $5,600 already typed in. Respondent marked out lots 111 and 117, signed the agreement and returned it to the county, presumably to purchase seventeen lots for $5,600.

The county then notified the municipalities that it had received an offer of $5,600 to purchase seventeen lots and that the municipalities had forty-five days in which to object to said private sale. Within the forty-five day time limit, the municipalities did file their petitions to have the court disapprove the private sale on the basis that the adjoining land owners had formed a civic association to buy the lots at a price higher than the sum the respondent was offering.

Respondent contends, by answer, argument and preliminary objections, that the municipalities have no standing to complain in view of the fact that section 613 of the Act clearly provides that the municipalities only have fifteen days, not forty-five, in which to file their petitions to disapprove the sale. The language in question is stated as follows:

"The corporate authorities of any taxing district, having any tax claims or tax judgments against the property which is to be sold or the owner may, if not satisfied that the sale price approved by the bureau is sufficient, within fifteen (15) days after notice of the proposed sale, petition the court of common pleas of the county to disapprove the sale." 72 P.S. §5860.613.

In answer to respondent's claim that the municipalities are barred by the calendar from protesting the private sale, the court must note, preliminarily, that the county is acting as an agent of the municipalities in providing such notices and the court shall not permit a result foreclosing the municipalities from recovering their delinquent taxes or previous owners from a final opportunity to redeem their real estate.

Section 208 of the Act clearly establishes that the county is acting as agent for the taxing districts. The representative of the county testified that he would accept any offer made to the county for a private sale on the theory that the municipalities would bear the responsibility of approving or rejecting such a sale. The county agent further testified that he was directed to extend, as a matter of policy, the fifteen day deadline to forty-five days, in order to permit the municipalities sufficient time to appraise the

property in question and file petitions if they objected.

Without reaching the issue of whether the fifteen day limit for filing petitions is mandatory or directory, the court finds that, in this particular case, the municipalities should not be prejudiced by the actual notice received in this matter. The intent of the act and all notice provisions thereunder is to guard against the deprivation of property without due process of law. Chester County Tax Claim Bureau Appeal, 208 Pa. Superior Ct. 384, 387, 222 A.2d 602, (1966); In re: Tax Claim Bureau of York County, 63 D. & C. 2d 414, 87 York 94 (1973).

The petition to disapprove the private sale should be entertained, nunc pro tunc. This narrows the issue before the court to one of determining the best possible price after comparison of the opposing offers. The taxpayers of this county and the municipalities desire to recover as much delinquent taxes as possible and to return to the active tax rolls as much property as possible.

Respondent referred throughout his testimony to the fact that he was offering $350 per lot. The experts produced by respondent and the municipalities respectively established the value of the lots at $350 and $353 each. The testimony from the civic association on their counteroffer was that the homeowners were prepared to pay $350 per lot and more, if necessary, to preserve the integrity of their backyard areas.

The actual agreement signed by respondent is for a total price of $5,600 for seventeen lots, or a unit price of $329.41 per lot. Accordingly, the court disapproves the private sale on the basis that the unit price is lower than the counteroffers, and the

court fixes the price below which the lots cannot be sold at $350 per lot.

Therefore, we enter the following

## ORDER

And now, February 25, 1977, upon consideration of the petitions, arguments and briefs submitted by respective counsel, it is ordered and decreed that:

1. The petitions of the City of Chester and Chester-Upland School District are timely filed.

2. The preliminary objections of Michael Kruczaj are overruled.

3. The private sale between the County Tax Claim Bureau of Delaware County and Michael Kruczaj for seventeen lots numbered 100 through 110, 112 through 116, and 118 of Lewis Street in the City of Chester, is hereby disapproved.

4. The price below which said lots shall not be sold is $350 each.